STATE OF LOUISIANA *v.* SLAVES LETHE, BINER, HAL AND CHLOE.

Justices of the Peace who preside over the trial of slaves, have the power to grant and refuse new trials.

APPEAL from a tribunal composed of two Justices of the Peace and ten owners of slaves, in the Parish of East Feliciana.   *D. C. Hardee*, for the accused.   *Isaac E. Morse*, (Attorney General,) for the State.

BUCHANAN, J.   This is a case of a capital prosecution of slaves before a tribunal, composed of two Justices of the Peace and ten slave owners, organized under the Act of the 1st June, 1846.

After the conviction of these slaves, a motion was made before the two Justices who presided, for a new trial; which motion was sustained after argument, and a new trial granted.   A day was assigned for the second trial, and jurors summoned; but on the day fixed, before the tribunal was organized, the District Attorney moved the Justices to set aside their order for a new trial, and to proceed to sign the sentence of the prisoners.   The principal ground taken by the District Attorney was, that the new trial had been moved before, and granted by the two Justices of the Peace, and not by the justices and jury of slave owners, who collectively composed the tribunal, and who collectively, it was argued, were alone competent to entertain a motion for a new trial.

The application of the District Attorney prevailed; the order granting the new trial was rescinded, and it was ordered by the justices that the sentence, originally pronounced, should be carried into effect.   From this, the prisoners have appealed.

The trial of slaves accused of capital crimes, is the subject of a special jurisdiction, of which the rules of proceeding are found in the statute which created it—the statute of 1846 above mentioned.   That statute is silent on the

subject of new trials; but the power of revising its judgments for the purposes of justice, seems incident to the constitution of every court of judicature. The Supreme Court, in the case of the *State* v. *Jackson*, 6 Annual, recognized the power of granting and refusing new trials, as resting in the discretion of the justices who preside over the trials of slaves. Upon that authority, we conclude that the ruling of the justices, rescinding the order granting the new trial for want of jurisdiction in the present case, was erroneous; and that the motion for new trial was properly addressed to the Justices of the Peace who presided at the trial.

This view is further strengthed by the phraseology of the 8th section of the Act of 1846, which is as follows: " In case the offender or offenders shall be convicted of any crime punishable with death, the said Justices (or Justice, as provided in the fifth section of this Act,) shall sign a sentence to that effect, which sentence shall be put in execution by and with the concurrence of the jurors assisting at the trial."

Here it is apparent that the conviction of the slave, by the tribunal composed of the justices and slave owners, cannot produce effect until the sentence is signed—not by the jury of slave owners—but by the Justices (or Justice) who presided at the trial; thus recognizing a separation of functions, and a position on the part of those Justices, similar to that occupied by the Judge in relation to the jury, in criminal trials conducted according to the forms of the common law. It should not be forgotten, as part of the history of the jurisprudence of this State, that in consequence of the abolition of the office of Parish Judge, by the State Constitution adopted in 1845, it became necessary to create a tribunal for the trial of slaves accused of capital crimes, to supply the place of the jurisdiction formerly vested on that subject in the Parish Judges. In the exercise of that jurisdiction, the Parish Judge was in like manner assisted by six freeholders, and the organization of that tribunal was similar to that in the statute of 1846. The words used in the statute of 1825, (Session Acts, page 206) are "a tribunal composed of the Parish Judge and six inhabitants, freeholders."

In practice under that old organization, it is believed that motions for new trials were always addressed to the Parish Judge alone.

It is therefore adjudged and decreed, that the judgment of the court of the first instance, rescinding the order granting a new trial in this case, be reversed; and that this cause be remanded to the same or other Justices of the Peace of the parish of East Feliciana, with directions to cause to be summoned a sufficient number of persons duly qualified to try the same *de novo*, and to proceed in all other things as the law directs.